Yan Yoorhis, J.
(dissenting). The petitioner-appellant, which is the landlord, appeals from an order denying its petition in an article 78 proceeding for an order annulling the determination of the temporary city housing rent commission, and directing the commission to authorize the subdivision of an apartment occupied by the tenant in the landlord’s apartment house at 1100 Park Avenue in the borough of Manhattan, City of New York. The tenant’s apartment consists of ten rooms and four baths on the seventeenth and eighteenth floors. The landlord proposes to subdivide this ample space into two new apartments on separate floors, one to be on the seventeenth floor consisting of seven rooms and four baths, the other on the eighteenth floor consisting of six rooms and four baths. The new apartments will provide for housing fourteen persons altogether. The present occupancy is by five persons.
The Emergency Rent Law, Local Law No. 66 for 1947, ratified by chapter 4 of the Laws of 1948, constituting section U41-7.0 of the Administrative Code (subd. f, cl. [3]), discloses a policy to increase housing accommodations in the city of New York, and recognizes that the fulfillment of this purpose would be impaired if tenancies were frozen, after the expiration of leases, in such manner as to leave no opportunity to the owners of multiple dwellings to subdivide apartments in order to make room for a greater number of occupants. In *764 construing this law, it should constantly be borne in mind that it manifests an intention that landlords shall have the right and opportunity to subdivide, after the expiration of lease, subject to approval by the temporary city housing rent commission. The paragraph above cited provides as follows (subd. f) : “ Upon approval of such plans and before proceeding with such alteration or improvement, application shall be made to the Commission for an order directing the tenant occupying such apartment to remain in possession of a suitable portion thereof, as determined by the Commission and to surrender possession of the remainder of said apartment, within a time to be fixed by the Commission, and to remain out of possession while such alteration or improvement of such remainder is being made.”
The commission made an order herein on November 16, 1948, granting petitioner’s application for authority to proceed with the alterations described, subject to certain conditions, among others, that during the progress of these alterations the tenant may elect to remain in a portion of his present apartment consisting of two rooms and one bath,' rent free, or that he may move to apartment 8-D upon another floor in the same building, consisting of eight rooms and four bathrooms, at a rental of $364.10 per month, in which event the landlord, at its own cost, was to move the tenant’s belongings to apartment 8-D and store the tenant’s excess furniture. The rental paid by the tenant for his present apartment is $500 per month. The new apartments to result from the contemplated subdivision were originally permitted by the commission to be rented at $425 per month and $365 per month respectively. The tenant was allowed to choose which he would select for his continued use. The tenant has no contractual rights, inasmuch as his lease has expired. He can claim only such rights as are given to him by this emergency rent statute.
The space allotted to the tenant in his present apartment during alterations, consisting of two rooms and one bath, was unsuitable to the tenant’s needs, as held by the rent commission and Special Term, with the consequence that the alternative accommodation of eight rooms and four baths assigned to the tenant on the eighth floor is to be regarded as the sole space provided by the landlord for the tenant during the proposed alterations. That space is adequate.
Subsequently the rent commission cancelled its previous order, and denied the application of petitioner in an order accompanied by a letter from the commission’s legal counsel, stating that the application was denied for the reason that this statute requires that suitable accommodation shall be furnished to the tenant in the apartment which is being subdivided while the work of making the necessary alterations is taking place.
The opinion at Special Term, in upholding the second determination of the commission, stated: “ It seems clear from the foregoing recital that the commission’s original order made adequate and reasonable provision for the tenant’s comfort during the period of the proposed alteration. The commission itself, when it rescinded its order, practically said as much. Its second order was bottomed solely on its lack of statutory power. Indeed, the commission intimated that on a proper occasion it might seek a broadening of its powers to enable it to cope with a situation such as that found in this case.”
The commission’s answering affidavit states that the commission determined that the tenant could not be required to accept an apartment in any other portion of the subject premises.
Such a view of the law is contrary to the determination of the hearing officer for the commission, who said: “ In effect, tenants contention is that it would be stretching a point too far to construe a 1 suitable portion ’ of the apartment as a suitable apartment in the premises. It is the opinion of the hearing officer *765 that such a consmction o£ the laws and regulations is too literal and narrow an interpretation of a section designed to effect more housing and that those words were used to make sure that other provisions regulating evictions would not be nullified via subdivision proceedings.”
It is true that the commission adopted a regulation stating specifically that during alterations a portion of the apartment being altered must be designated for the tenant. This, however, would in practice nullify the purpose of the local law, which is to permit alterations subject to reasonable conditions to be imposed by the commission. It is a rule that statutes are to be construed, if possible, so as to avoid absurd results (Curtis v. Leavitt, 15 N. Y. 9). It cannot have been contemplated that, as a condition of permitting alterations in an apartment, provision must be made for the tenant to remain in the apartment being altered while the alterations are going on. The floor might be taken out from under him, new partitions erected in or about his living quarters, his Oriental rugs and other valuables covered with plaster and sawdust, and his peaceful enjoyment disturbed by sawing and hammering, and other operations interrupting domestic tranquillity to such a degree that hardly ever could a court hold that such accommodations would be reasonable or suitable.
This statute, as drawn, is not wholly clear. It appears to confuse the quarters which are to be occupied by the tenant while alterations are in progress, with the space which he may retain after the subdivision of an apartment has been completed. The latter is the space which must be part of the same apartment that was occupied before it was subdivided. While the first lines of the paragraph could be construed to mean that the quarters allotted during alterations must be in such apartment also, that would lead to an absurd result, and would practically destroy the object of the whole provision. Such a construction does not fit the last lines of the section, which states that the tenant is “ to remain out of possession while such alteration or improvement of such remainder is being made.” The language last quoted means either that the tenant is to remain out of possession of the entire apartment while the alterations are being made, or else that before the work has been started he must be moved into that portion of the apartment which he ultimately will occupy, and live within imaginary walls and partitions as though the subdivision had been completed before having been begun. The commission and the courts are not bound to accept such an impractical interpretation as this last, even if it seem to be required by the strict language of the act.
In Riggs v. Palmer (115 N. Y. 506, 509) the Court of Appeals made the well-known statement, which is particularly applicable here: “ It is a familiar canon of construction that .e makers of a statute is as much letter; and a thing which is within tne tetter or tne statute is not witrnn tne statute, unless it be within the intention of the-makers. The writers of laws do not always express their intention perfectly, but either exceed it or fall short of it, so that judges are to collect it from probable or rational conjectures only, and this is called rational interpretation ”, (Cf. Chittenden Lumber Co. v. Silberblatt & Lasker, Inc., 288 N. Y. 399, 402.)
The order appealed from should be reversed and the commission directed to permit the alterations to proceed in accordance with its original order.
Peck, P. J., Dore, Cohn and Shientag, JJ., concur in decision; Van Voorhis, J., dissents in opinion.
Order affirmed, with $20 costs and disbursements to the respondents. Mo opinion.